**LONE STAR HEAT TREATING CO., LTD., Appellant**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, Appellee.**

No. 14–06–00028–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 23, 2007.

Charles E. Frost, Jr., and Steven Jon Knight, Houston, TX, for appellants.

John C. Hart, Fort Worth, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

In this insurance coverage dispute, appellant, Lone Star Heat Treating Co., Ltd. ("Lone Star") appeals from an order granting summary judgment in favor of appellee, Liberty Mutual Fire Insurance Company ("Liberty Mutual") and denying Lone Star's motion for summary judgment. In three issues, Lone Star contends it is entitled to damages for breach of contract, a statutory penalty, and attorney's fees because the exclusion upon which Liberty Mutual relied to deny coverage is not applicable. We reverse and render in part and reverse and remand in part.

### I. BACKGROUND

Lone Star is a Texas limited partnership engaged in the business of heat treating metals. Typically, customers ship products to Lone Star for treatments and retrieve them after the work is completed. Lone Star usually operates three shifts per day: 7:00 a.m. to 3:00 p.m.; 3:00 p.m. to 11:00 p.m.; and 11:00 p.m. to 7:00 a.m. During the relevant time period, most customers retrieved their materials during the first shift—when Lone Star's administrative staff was present. However, customers sometimes retrieved materials during the second shift. Only a few employees worked the second shift. Lanis Roberts was the senior employee during the second shift.

When a customer retrieved materials after 5:00 p.m., it usually made advance arrangements and the documentation was left for Roberts. However, without advance notice, customers occasionally sent a truck driver to retrieve products after 5:00 p.m. In that situation, Roberts was required to call the shipping and receiving manager, Danny Bierman, or Bierman's supervisor, Dexter Wilson, to determine whether ma-

terials should be released to the "pick-up person." If Roberts received instructions to release the material, he was required to obtain appropriate documents from the "pick-up person."

On September 28, 2004, a man who identified himself as "Robert Smith" appeared at Lone Star's loading dock. Smith pointed out two pallets of steel he was purportedly sent to retrieve. Smith told Roberts that Danny Bierman knew about the matter. Roberts stated that he could not release the materials without proper documentation. Smith offered to write and sign a ticket. When Roberts requested the identity of Smith's customer, he replied "Baker." After Smith signed the ticket, Roberts permitted Smith to take the two pallets of steel. This steel was not owned by "Baker." It was owned by two different Lone Star customers. Lone Star never identified "Robert Smith," and the steel was not recovered. Therefore, Lone Star paid both customers the value of their steel.

At the time of this incident, Liberty Mutual insured Lone Star under a "Commercial Policy." Under the BASIC COVERAGE FORM, the policy covers, among other interests, "Personal Property of Others for which you are liable when in your actual or constructive custody." Lone Star made a claim against Liberty Mutual for its loss of $78,723.85, representing the value of the steel less the policy deductible. Liberty Mutual denied the claim based on a "dishonesty exclusion."

Lone Star sued Liberty Mutual, alleging it breached the policy and violated former article 21.55 of the Texas Insurance Code by failing or refusing to timely pay the claim. Lone Star and Liberty Mutual each filed a motion for summary judgment.

On December 9, 2005, the trial court signed a final judgment, granting Liberty Mutual's motion for summary judgment, denying Lone Star's motion for summary judgment, and ordering that Lone Star take nothing relative to its claims against Liberty Mutual.

## II. STANDARD OF REVIEW

■ Under well-established standards governing a traditional motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). We review a summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* When, as here, both parties move for partial summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have entered. *Id.*

■ Although the insured bears the initial burden to prove its claim falls within the scope of coverage afforded by the policy, the insurer bears the burden to prove an exclusion precludes coverage. *Lennar Corp. v. Great Am. Ins. Co.,* 200 S.W.3d 651, 663 (Tex.App.-Houston [14th Dist.] 2006, pet. filed) (citing former statute replaced by current version); *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.,* 130 S.W.3d 181, 193 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Evergreen Nat'l Indem. Co. v. Tan It All, Inc.,* 111 S.W.3d 669, 675 (Tex.App.-Austin 2003, no pet.); *see* TEX. INS.CODE ANN. § 554.002 (Vernon Supp.2006).

The traditional rules for construction of contracts are applicable when we interpret an insurance contract. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex.1997); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). When construing a contract, our primary concern is to give effect to the written expression of the parties' intent. *Forbau*, 876 S.W.2d at 133. We are bound to read all parts of a contract together to ascertain the agreement of the parties. *Id.* When terms are defined, those definitions control interpretation of the policy. *Trinity Universal Ins. Co.*, 945 S.W.2d at 823. If we can give a contract only one reasonable meaning, the contract is not ambiguous and we will enforce it as written. *See State Farm Fire & Casualty Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998). Any ambiguity must be evident from the policy under scrutiny, and we may not consider extrinsic evidence unless the language is ambiguous. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006).

### III. THE "DISHONESTY EXCLUSION"

The Liberty Mutual BASIC COVERAGE FORM has the following exclusionary language:

We will not pay for "loss" caused directly or indirectly by any of the following: Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

D. Dishonesty:

Dishonesty or criminal acts by you, any of your partners, employees, directors, trustees, authorized representative or anyone to whom you entrust the property for any purposes:

(1) Acting alone or with others; or

(2) Whether or not occurring during the hours of employment;

This exclusion does not apply to acts of vandalism by your employees; however, theft by employees is not covered.

### A. Lone Star's Contentions

In its first two issues, Lone Star contends Exclusion D does not preclude coverage for its property theft claim. Lone Star contends that "you" in Exclusion D refers only to Lone Star and does not include its employees. Thus, Lone Star argues that the exclusion is inapplicable because *Lone Star* did not entrust the property to Smith. In its motion for summary judgment, Lone Star asserted that the exclusion is unambiguous and must be construed in favor of Lone Star, or alternatively, if the exclusion is ambiguous, it must be construed in Lone Star's favor.

Lone Star offers several reasons why "you" in Exclusion D does not include its employees. Lone Star compares the second phrase which begins after the "or" conjunction. The first phrase applies to dishonesty or criminal acts by "you, any of your partners, employees, directors, trustees, authorized representative." In contrast, the second phrase pertaining to entrustment precludes coverage for dishonesty and criminal acts by "anyone to whom *you* entrust the property for any reason ..."

Lone Star further argues that "you" is specifically defined as "LONE STAR HEAT TREATING CO. LTD." Relative to the risk associated with entrustment of insured property, Lone Star asserts that Liberty Mutual has expressly distinguished between the Named Insured and its "employees."

In interpreting the word "you," Lone Star asks the court to distinguish third party negligence claims that involve vicarious liability, from traditional insurance contract and agency law. Lone Star then

refers the court to statutes governing conduct of business for limited partnerships and suggests that its president, who is the general partner, should be denominated as the only agent who can represent and bind Lone Star. Consequently, Lone Star contends it did not entrust the property to Robert Smith because employee Roberts was not authorized to "hand over" customer material to Robert Smith.

## B. Liberty Mutual's Contentions

Liberty Mutual first contends the policy should be construed "in light of surrounding circumstances" and suggests that the disagreement between the parties is not about "what the policy means, it is about whether Lone Star entrusted the property to Robert Smith." Secondarily, and converse to its first contention, Liberty Mutual contends Exclusion D is unambiguous and the rule of strict construction in favor of the insured is not applicable. However, the major thrust of Liberty Mutual argument is that a corporation can only act through its employees; thus, "you" necessarily includes Lone Star's employees. Accordingly, Liberty Mutual asks this court to resolve the coverage question by deciding whether a Lone Star employee's act, "in the course and scope of his employment, was attributable to Lone Star."

## C. Analysis

Liberty Mutual insured Lone Star against "direct physical loss" as defined in the policy unless such loss is excluded. The BASIC COVERAGE FORM provides first party coverage and under, Part 1 "INTEREST AND PROPERTY COVERED," subsection A(4), Liberty Mutual agreed to cover "your" (the named insured's) insurable interest in "Personal Property of Others for which you are liable when in your actual or constructive custody." Under subsection A(6) "Personal

Property in transit" is included under INTEREST AND PROPERTY COVERED. There is precatory language at the top of the BASIC COVERAGE FORM instructing the reader to refer to GENERAL POLICY CONDITION 31 for definitions. Under general condition 31–O, Personal Property in transit, "Means coverage on Personal Property from the time it leaves the original point of shipment until it is delivered at destination." The period of time when coverage is applicable for property in transit includes: "(1) While the property is in your care, custody or control; (2) While the property is in the care, custody or control of hired carriers * * *." Under the stipulated facts, the property in question was in the named insured's care, custody or control when it was removed from the loading dock.

In determining whether Liberty Mutual was entitled to summary judgment, we must resolve the following issues: (1) whether "You" as defined in the policy includes employees of the Named Insured; and (2) whether Roberts's unauthorized act of entrustment, in furtherance of the business of Lone Star, is attributable or imputable to Lone Star. Stated differently, Liberty Mutual is entitled to summary judgment if the policy definition of "You" includes employees while acting in furtherance of Lone Star's business *or*, if Roberts's act of entrustment is attributable or imputable to Lone Star.

Liberty Mutual's Commercial Policy has multiple features and forms. It is so voluminous that it begins with a five-page reference index. After the index, there are two introductory forms entitled SPECIAL POLICY CONDITIONS and GENERAL POLICY CONDITIONS. On the SPECIAL POLICY CONDITIONS form, we find the following language in paragraph 1:

WORDS WITH SPECIAL MEANING

Throughout this Policy:

A. The words **you, your** and **yourself** refer to the NAMED INSURED shown in ITEM 1 of the policy DECLARATIONS

B. The words **we, us** and **our** refer to the Company providing this insurance; and

C. Other words and phrases that appear within quotations marks have special meaning. Refer to GENERAL POLICY CONDITION 31 titled DEFINITIONS or the DEFINITIONS section of any form or endorsement attached to the policy.

In the BASIC COVERAGE FORM, Liberty Mutual included "employees" in the first phrase of Exclusion D and did not include employees in the entrustment phrase. A plain reading of the policy as a whole, militates the conclusion that "you" does not include the Named Insured's employees. Liberty Mutual unambiguously defined "you" as the Named Insured, "LONE STAR HEAT TREATING CO. LTD.," and we must duly regard defined terms as controlling when interpreting policy provisions. *Trinity Universal Ins.*, 945 S.W.2d at 823. We would violate this important rule of construction if we otherwise concluded that "you" includes employees.

To determine whether coverage is applicable under the BASIC COVERAGE FORM, we are bound to read all parts of the policy together to ascertain the agreement of the parties. *See Forbau*, 876 S.W.2d at 133. We note the same exclusionary language pertaining to dishonesty that appears under Exclusion D in the BASIC COVERAGE FORM also appears in the ACCOUNTS RECEIVABLE COVERAGE FORM and the VALUABLE PAPERS AND RECORDS COVERAGE FORM. Throughout the policy, Liberty Mutual consistently included "employees" in the first phrase, but omitted "employ-

ees" from the "to whom you entrust" phrase.

Significantly, Liberty Mutual included the following language in the COMPREHENSIVE ELECTRONIC SYSTEMS COVERAGE FORM under Exclusion C:

Dishonest, fraudulent or criminal acts by:

(1) you, any partner, director, officer, trustee, or agent;

(2) others who have an interest in the property;

(3) others to whom you entrust the property; or

(4) **employees of (1)(2), or (3) whether or not they are at work**

This language is consistent with the "special meaning" and definition of "You" expressed on the SPECIAL POLICY CONDITIONS form. Here, Liberty Mutual has clearly delineated between the Named Insured ("you") and its employees. We cannot ignore the above provisions because we are required to read all parts of the contract together to ascertain the agreement of the parties. *Forbau*, 876 S.W.2d at 133.

We agree with Liberty Mutual's second contention that the policy language in question is unambiguous. However, we disagree with Liberty Mutual's contention that we must consider "surrounding circumstances" in interpreting the policy. Implicitly, Liberty Mutual asks this court to find latent ambiguity in the exclusionary language. *See Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus. Inc.*, 907 S.W.2d 517, 520–21 (Tex.1995) (explaining latent ambiguity arises when a contract which is unambiguous on its face is applied to a fact pattern and an ambiguity appears by reason of some collateral matter). Liberty Mutual refers this court to *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731 (Tex. 1981) to support its "surrounding circum-

stances" argument. However, the *Madeley* court acknowledged that the parol evidence rule applies even to the extent of prohibiting proof of surrounding circumstances when, by the terms of the contract, the intent of the parties is so worded that it is not fairly susceptible to more than one legal meaning or construction. *Id.* at 732. In the context of unambiguous insurance policy provisions, the rule excluding extrinsic evidence was recently followed by our supreme court. *Fiess*, 202 S.W.3d at 747. Accordingly, we hold that "you" is unambiguously defined in the policy and does not include the Named Insured's employees.

Liberty Mutual refers this court to *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003), and suggests that the entrustment portion of the dishonesty exclusion is rendered meaningless if we conclude that "You" does not include the named insured's employees. However, our interpretation of the policy does not foreclose applicability of Exclusion D when an employee is authorized by the named insured to entrust property. The entrustment portion of the exclusion is applicable when "You," meaning the Named Insured, directs or authorizes employees to entrust the property.

Accordingly, we turn to the second part of this coverage question and determine whether Roberts's act of entrustment is imputable to Lone Star. It is undisputed that Lone Star entered into bailment agreements. Lone Star's loss occurred because of its liability as a bailee of property.[1] In its brief, Liberty Mutual provides "real world" scenarios and asks the court to employ the general rule that acts of a corporate agent on behalf of the corporation are deemed the corporations's acts. *See Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex.1995). However, the cases Liberty Mutual cites to support this argument generally pertain to an employer's liability for damage or injury to third parties when caused by the conduct of an employee or agent. In *Durand v. Moore*, 879 S.W.2d 196 (Tex.App.-Houston [14th Dist.] 1994, no writ), the court discussed the respondeat superior doctrine as it pertained to an employer's liability for an assault; *See also Hedley Feedlot, Inc. v. Weatherly Trust*, 855 S.W.2d 826 (Tex. App.-Amarillo 1993, writ denied) (pertaining to imputation of liability from agent to principal because of alleged misrepresentations). Courts employ vicarious liability and respondeat superior doctrines, when imputing liability to an employer for acts or omissions of employees. These doctrines are applicable in determining an employer's liability to third parties, even if the employee's acts were unauthorized. *See GTE Southwest Inc. v. Bruce*, 998 S.W.2d 605, 617–18 (Tex.1999).

The pivotal question is whether Lone Star entrusted the property. In determining whether Roberts's unauthorized act of entrustment is imputable to Lone Star, our focus is not on the three-party relationship between bailors of the steel material, Roberts and Lone Star. Considering the policy distinction between the Named Insured and its employees, we cannot charge the named insured with conduct that negates or obviates coverage unless the Named Insured engaged in the conduct. Accordingly, our focus is on com-

---

**1.** The basic elements of a bailment are: (1) delivery of personal property by one person to another in trust for a specific purpose; (2) acceptance of such delivery; (3) an express or implied contract that the trust will be carried out; and (4) an understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs. *Yoakum Grain Inc. v. Energy Indus., Inc.*, 511 S.W.2d 95, 98 (Tex.App.-Corpus Christi 1974); 8A TEX. JUR.3D, *Bailments* § 3 (2007).

mon law doctrines that pertain to the two-party relationship between employee and employer. Here, the parties have stipulated that Roberts was acting as an employee of Lone Star when he released the materials to Smith. Consistent with the policy distinction between the Named Insured and its employees, we must determine whether the Named Insured actually entrusted the property. Therefore, imputation of Roberts's act of entrustment is contingent on whether Roberts had actual authority to entrust the property to "Robert Smith." Actual authority includes both express and implied authority and usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care, allows the agent to believe he possesses. *2616 South Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

Therefore, we consider whether the record contains any summary judgment evidence of Lone Star's representations, acts, or omissions that amount to actual authority for Roberts to entrust the property. In Roberts's affidavit, which was attached to Lone Star's Response to Liberty Mutual's motion for summary judgment, he averred in paragraph 7 as follows: "No one had or has ever told me that I was authorized to hand over customer materials to a trucker without either the paperwork from Danny Bierman or approval by telephone from Danny or Dexter, or from Mike Van Dorfy Jr." Roberts's averment is not controverted in Liberty Mutual's response to Lone Star's motion for summary judgment.

The parties stipulated, inter alia, as follows:

(1) At the time this incident occurred, Roberts was the only Lone Star employee on site who had any authority to release customer loads after 5 p.m., and

his authority was limited to those situations in which he had proper documents from Danny Bierman, Lone Star's shipping and receiving manager, or actual verbal authority from Bierman or his supervisor, Dexter Wilson, (2) Smith also told Roberts that Danny Bierman, Lone Star's Shipping and receiving manager, knew about this matter, (3) Roberts was acting in his capacity as an employee of Lone Star when he released the materials to Smith, (4) Roberts entrusted the material in question to Smith, and (5) Prior to September 28, 2004, Lone Star's management acted with a lack of due care in ensuring that Mr. Lanis Roberts clearly understood that customer products should not leave Lone Star's facility without clear authorization and completion of proper paperwork in that Lone Star's management was not as careful in setting up and reviewing procedures, related administrative forms, and training for handling after-hours pick-up as they should have been.

First, it is clear from the undisputed summary judgment evidence and stipulations of the parties that Lone Star did not intentionally confer authority on Roberts to entrust the property to "Robert Smith." Second, we acknowledge Roberts's uncontroverted averment that he knew he was not authorized to entrust the property under the circumstances presented. Accordingly, we cannot conclude that Lone Star intentionally allowed Roberts to believe he had the authority.

Our third and final determination relative to actual authority is whether Lone Star "allowed" Roberts to believe he had authority to release the material through its want of due care. Here, we must consider summary judgment evidence and stipulations that appear, at first blush, to be inconsistent. The parties stipulated

that Smith deceived Roberts into believing that Danny Bierman knew about his request to take possession of the material. The parties also stipulated that Lone Star's management acted with lack of due care in ensuring that Roberts clearly understood the procedure for after-hours pick-up. However, relative to actual authority, the question is whether Lone Star's lack of due care and failure to ensure Roberts clearly understood that customer products should not leave its facility allowed or caused Roberts to believe he had authority to entrust the material. According to Roberts's uncontroverted affidavit, he was fully aware of the conditions that must be fulfilled before he had permission to entrust material to a third party. Consequently, the stipulation that Roberts was deceived by Smith into believing Bierman had granted permission for Smith to take the material militates the legal conclusion that Lone Star did not give actual (implied) authority for Roberts to entrust the material to Smith. Accordingly, we hold the dishonesty exclusion does not preclude coverage, because Lone Star did not entrust the property to Smith.

Lone Star's first and second issues are sustained.

### IV. DAMAGES, PENALTIES AND ATTORNEY'S FEES

In its third issue, Lone Star asserts that it is entitled to recover actual damages, attorney's fees, and a statutory penalty under former Texas Insurance Code Article 21.55. Act of May 27, 1991, 72nd Leg., R.S., Ch. 242, § 11.03(a), Tex. Gen. Laws 1043 (repealed and recodified 2003) (current version at TEX. INS.CODE ANN. § 542.058–060 (Vernon Supp.2006)).

Because we have sustained Lone Star's first and second issues, we hold Liberty Mutual breached its contract by failing to timely remit damages claimed by Lone Star. Accordingly, the trial court erred by granting Liberty Mutual's motion for summary judgment and denying Lone Star's motion for summary judgment with respect to the breach of contract claim.

Liberty Mutual did not contest Lone Star's calculation of actual damages in the amount of $78,723.85. Therefore, we reverse the judgment in favor of Liberty Mutual, and render judgment for Lone Star Heat Treating Co., Ltd., in the amount of $78,723.85. We remand with instructions for the trial court to determine the amount of the statutory penalty and reasonable attorney's fees prescribed under former Texas Insurance Code Article 21.55.