

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00465-CV

MATTHEW GEORGE, APPELLANT

V.

STATE FARM LLOYDS, APPELLEE

On Appeal from the 53rd District Court
Travis County, Texas
Trial Court No. D-1-GN-11-002764, Honorable Stephen Yelenosky, Presiding

May 19, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant Matthew George appeals from the trial court's judgment in favor of State Farm Lloyds. Through one issue, George contends this judgment is in error. We will affirm.

*Background*

This case was tried on agreed facts. They disclose that State Farm was the insurer of Matthew George's property. While the policy was in effect, George's property was damaged by water diverted onto his property when a third party placed large cylinders across a drainage ditch. During a heavy rain, the cylinders "both dammed the

ditch and directed water that had been collected in the drainage ditch to overflow onto George's property." The parties, through the Agreed Statement of Facts, stipulated that if George's loss was covered, "he shall recover $46,000.00 plus prejudgment interest."

The policy contains several exclusions under Section I entitled "Losses Not Insured." Those exclusions are found in the following sub-sections:

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

\* \* \*

c. Water Damage, meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

\* \* \*

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1 and 2 immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, sitting;
(2) design, specifications, workmanship, construction, grading, compaction;
(3) materials used in construction or repair; or
(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.

2

However, we do insure for any ensuing loss from items a. and b. unless the ensuing loss is itself a Loss Not Insured by this Section.

George argues he satisfied his burden of proof by establishing in the agreed facts that he purchased and was covered by a property insurance policy when he suffered a loss. He asserts State Farm failed to meet its burden of proof by failing to prove that the event at issue was an excluded event and caused by flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of those. State Farm responds that even if the actions of the third party in diverting the water caused the damage to George's property, the overflow of water is excluded from coverage under the policy regardless of the cause of the overflow. We agree.

*Standard of Review*

This is a case tried on agreed facts under Texas Rule of Civil Procedure 263. The sole issue is whether the trial court properly applied the law to the agreed facts. So, we review the case *de novo*. *Patterson-UTI Drilling Co. LP, LLLP v. Webb County Appraisal Dist.,* 182 S.W.3d 14, 17 (Tex. App.—San Antonio 2005, no pet.). Finally, while the insured bears the initial burden to prove its claim falls within the scope of coverage afforded by the policy, the insurer bears the burden to prove an exclusion precludes coverage. *Lone Star Heat Treating Co., Ltd. v. Liberty Mut. Fire Ins. Co.,* 233 S.W.3d 524, 526 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

*Exclusion of Coverage*

No one disputes that excluded from coverage is "water damage" caused by a "flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind." The policy also includes an exclusion providing, "[w]e do not insure for such loss regardless of: (a) *the cause of the excluded*

3

*event*; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss." (Emphasis added).

George argues that because the water was diverted from a ditch to his property through the actions of a third party, it is neither "flood water" nor an "overflow of a body of water," and thus, State Farm failed to satisfy its burden to show the exclusion applied. We disagree.

Because the term "flood" was not defined in the policy, we apply its common or plain meaning here. *City of Houston v. Hotels.com, L.P.*, 357 S.W.3d 706, 713 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). And, that denotes "a rising and overflowing of a body of water" or an "overwhelming quantity or volume." *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 447 (10th ed. 1995). When rainwater rises in, exceeds the level of, and escapes from the banks of a ditch constructed to hold that water, a flood occurs, if one is to accept the plain meaning of the word flood. That is what happened here. A ditch was dug near appellant's home. Thereafter, a large volume of water drained into and began to fill the ditch. Eventually, the water level within the ditch rose and exceeded its banks. The excess water then coursed over an area of land onto appellant's property and caused damage. In short, the event illustrates a flood. Though it may have been relatively small, nothing in the insurance agreement specified that the escaping water had to cover a certain area before it could be deemed a flood. And, such a condition cannot now be written into the policy by us.

Furthermore, that the flood or overflow of water at issue was facilitated by the presence of obstructions across the top of the ditch is of no consequence. This is so

4

because the policy specified that the insurer did not insure against loss resulting from the excluded event "regardless" of "the cause of the excluded event."

*Ambiguity of Policy*

George, further, argues the policy is ambiguous because sections 3a and 3b are "poorly written and confusing." While it may be that the contractual language at issue (and in many insurance agreements) could have been rewritten in a way that facilitated its understanding, we do not find the verbiage ambiguous.[1]

A contract is only ambiguous if its language is subject to two or more reasonable interpretations. *Monsanto Co. v. Boustany,* 73 S.W.3d 225, 229 (Tex. 2002). The provisions at issue here are not subject to two or more reasonable interpretations; nor have we been proffered two or more reasonable interpretations to which it could be subjected. Therefore, the policy is not ambiguous.

*Intent of the Parties*

Lastly, George appears to argue that the policy does not reflect the intent of the parties at the time he purchased the policy. Yet, he does not argue that he 1) was the victim of fraud or mistake or 2) was unaware of the presence of the exclusion at issue. Rather, he asserts that when buying the policy, the parties intended to cover damages such as those occurring here because no one would expect a tidal wave in Austin and "nobody would reasonably think that a drainage ditch was a 'body of water.' Nor would anyone think an event was a 'flood' when only one house was damaged." Instead, in

---

[1] George does not point to an ambiguity in the applicable exclusion under section 2; nor does he explain why the parties' differing views of the provisions constitute a legal ambiguity.

his view, "State Farm Lloyds [was] attempting to distort a diversion of water onto one person's property into a flood or an overflow of a body of water." We disagree.

In construing a contract, we "ascertain the true intentions of the parties as expressed in the writing." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). In the absence of fraud or mistake, the writing alone will be deemed to express the intention of the parties, and courts will enforce an unambiguous instrument as written. *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 524 (Tex. 1982); *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex. 1981); *Rutherford v. Randal,* 593 S.W.2d 949, 953 (Tex. 1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968).

As previously discussed, no ambiguity exists in the relevant policy exclusions here. Furthermore, they encompassed water damage from a flood. And, the plain meaning of a flood included the overflow at issue here, as discussed above. And, because the word was not conditioned with language describing an overflow of biblical proportion like that experienced by Noah, or an overflow like that wrought by a Katrina-type hurricane, we cannot now write into the agreement verbiage mandating such a catastrophic event before the event is excluded from coverage. Again, we look only to the language as written in the policy, not any subjective intent that might or might not have been present at the time the policy was issued. And, the language of the contract here encompassed the overflow of water at issue here.

Each issue is overruled, and we affirm the trial court's judgment.

Per Curiam

6