**Opinion issued March 31, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-23-00193-CV

————————————

**RAYMOND JAMES & ASSOCIATES, INC., Appellant**

**V.**

**ANN CHRISTENSEN, INDIVIDUALLY AND AS INDEPENDENT EXECUTOR OF THE ESTATE OF SCOTT REAGAN MILLER, DECEASED; WILSON JOSEPH MILLER, INDIVIDUALLY; SAMUEL LANE MILLER, INDIVIDUALLY; ELLIOTT JAMES MILLER, INDIVIDUALLY; MERLE WAYNE MILLER, INDIVIDUALLY; AND LORIS YVONNE MILLER, INDIVIDUALLY, Appellees**

*and*

————————————

NO. 01-23-00194-CV

————————————

**RAYMOND JAMES & ASSOCIATES, INC., Appellant**

**V.**

**STANTON WELCH, Appellee**

*and*

**RAYMOND JAMES & ASSOCIATES, INC., Appellant**

**V.**

**JENNIFER TELLEPSEN, INDIVIDUALLY, AS DEPENDENT ADMINISTRATOR OF THE ESTATE OF MARC TELLEPSEN, DECEASED, AND AS NEXT FRIEND OF XXXX XXXXXXXXX AND XXXXX XXXXXXXXX, MINORS; TOM TELLEPSEN, II; AND KATHLEEN TELLEPSEN, Appellees**

**On Appeal from the Probate Court No. 2
Harris County, Texas
Trial Court Case Nos. 477,158-401, 477,158-402, and 477,158-403**

**O P I N I O N**

These appeals arise out three lawsuits concerning a fatal airplane crash.

Jeffrey Weiss piloted the plane. The passengers were Weiss's friends Stuart and Angie Kensinger, as well as Scott Reagan Miller, Marc Tellepsen, and Mark Scioneaux. They were traveling to the Kensingers' ranch to discuss a building and landscaping project. The plane crashed en route, tragically killing all aboard.

In the ensuing investigation, the National Transportation Safety Board concluded that Weiss was at fault. No party disputes this conclusion.

The appellees, a combination of representatives of the estates of the deceased passengers and their wrongful death beneficiaries, sued Weiss's estate, as well as

2

Weiss's employer, Raymond James & Associates, Inc. The appellees contended Raymond James was vicariously liable for Weiss's negligence because he was acting in the scope of his employment while piloting the plane.

Weiss was employed as a financial advisor. The appellees presented evidence that Weiss used aviation as a vehicle for engaging in business development. The appellees also presented evidence that Weiss had, at times, labeled passengers on the plane as business prospects.

The jury agreed with the appellees. It found that Weiss negligently caused the fatal crash and was acting in the scope of his employment at the time of the crash.

On appeal, Raymond James argues the evidence is legally insufficient to support the jury's finding that Weiss was acting in the scope of his employment. Because we conclude the evidence is legally sufficient, we affirm.

## BACKGROUND

The parties' dispute on appeal is a narrow one: whether the jury heard evidence legally sufficient to support its finding that Weiss was acting in the scope of his employment with Raymond James at the time of the fatal accident. We confine our recitation of the background to the evidence relevant to the issue. The jury charge explained the legal doctrine as follows:

An employee is acting in the scope of his employment if—

he is acting in the furtherance of the business of his employer and

3

his action is of the same general nature as the conduct authorized by his employer and is for the accomplishment of the object for which the employee was hired.

In some circumstances, an employee's conduct may be within the general nature of the conduct authorized by the employer even if it is contrary to the employer's express orders. Whether the employee is acting contrary to express orders is one factor that you may consider in deciding whether an act is in the scope of employment.

*Weiss's Role at Raymond James*

Jeffrey Weiss was employed as a financial advisor by Raymond James, a firm that engages in financial planning and investing for clients. Weiss had been with the firm since 2012. His title was Senior V.P., Investments.

The firm summarized Weiss's position as follows: "Prospect for and retain clients in order to enable those clients to reach their financial goals based on their objectives, time horizon, and risk tolerance." Seeking business from clients and potential clients was listed among Weiss's essential job duties. Charles Zimmerman, the former manager of the Houston branch and Weiss's direct supervisor, testified that "any successful financial advisor certainly does prospect in order to grow their business."

Frank Maggio, who knew Weiss from their days at another firm, explained that a financial advisor's income is directly related to the development of new business. New business would benefit both Weiss and Raymond James. In Maggio's experience, Weiss's general approach to business development was to establish a

4

friendship with a potential client before seeking their business. As part of this approach, Weiss would invest significant time developing prospective clients.

*Weiss's Airplane Use*

Weiss was an avid pilot of small airplanes. In a 2016 e-mail exchange with Maggio, Weiss explained that he used his enthusiasm for aviation to develop new business: "I'm still doing a lot of flying: personal, business, charity and volunteer. *In fact it's through aviation that I am acquiring clients and new opportunities*." (emphasis added). In the same e-mail exchange, Weiss wrote that his business was booming: "I'm doing great here at Raymond James. My business is growing in just the manner I like it. My assets under management grew 20% last year when the industry was flat to down. My revenues were up 49% also when the industry was flat to down."

Expense reports submitted by Weiss corroborate his use of aviation to develop business. In 2016, Weiss became eligible for a personal business development account with the firm, a program under which qualifying financial advisors could set aside some of their own money each year on a pre-tax basis. Like a flexible spending account, the advisor had to use the money set aside in this account by the year's end or it was lost. Once Weiss became eligible for this account, his associated expense reports show that he expensed costs for flights involving clients and potential clients.

5

*Weiss, the Kensingers, and Reagan Miller*

Though the Kensingers had long known Weiss and had flown with him before, Weiss began identifying them as prospective clients in expense reports about a year and half before the fatal accident. Either Stuart or Angie or both are listed as prospects in expense reports associated with flights from January 2018, February 2018, September 2018, and March 2019.[1] Reagan Miller (another individual on the flight) likewise was identified as a prospective client in an expense report associated with a flight in February 2018.

Weiss also had a conventional expense account, through which the firm reimbursed certain business-related expenses. Expense reports for this account list Stuart Kensinger as a prospect for meals in the same timeframe: January 2018, May 2018, and January 2019, as well as two earlier meals in 2016 and 2017.

*Conventional Account Travel Reimbursement Policy*

The firm's travel and expense reimbursement policy, which applied to Weiss's conventional expense account, expressly forbade the use of private aircraft for business use. The applicable provision stated: "In accordance with corporate policies and insurance contracts, associates are strictly prohibited from piloting

---

[1] Weiss had other flights with them that he did not expense. But he also had flights that he did expense, labeling them as prospects.

airplanes, helicopters, or watercraft for business use, which includes entertaining clients."

Evidence showed Weiss was aware of this policy. In December 2015, an administrative manager of the firm, Ryan Strange, inquired whether flight-related expenses could be reimbursed on Weiss's behalf. In his e-mail, Strange wrote: "We have an advisor who wanted to know if he could expense some/all of his costs for flying his own airplane to a RJA conference. Is there anything in our system similar to the standard mileage rate that we would use for automobile travel?" The accounts payable department answered that flight-related expenses could not be expensed and referenced the prohibition in the travel and expense reimbursement policy. Weiss thanked Strange for trying and commented, "I guess I'll just have to make up the expense in the long run."

*Personal Business Development Account*

On the other hand, after Weiss became eligible for a personal business development account, he began expensing flight-related costs via this account. The firm repeatedly approved expenses for Weiss's flight costs through this personal business development account.

Zimmerman, the Houston branch manager, testified that the firm's policy for personal business development accounts did not to his knowledge include a flight prohibition like the one in the firm's travel and expense reimbursement policy.

Strange, however, characterized Weiss's expense reports for such expenses as a misrepresentation, because Weiss was reporting flight miles as automotive miles. It is undisputed that Weiss did characterize flight miles in this way to expense them. Strange further testified that no one in management at Raymond James was contemporaneously aware of Weiss's misrepresentation.

Nonetheless, the firm approved expenses for miles that could not possibly represent travel by automobile rather than plane. For example, one August 2016 expense report for over $1,500.00 stated 2,856 miles for a day's travel. Strange acknowledged that he did not make any inquiry as to whether the firm's practice differed from its written policy. In addition, the firm policy delegated authority to approve these personal reimbursement requests, and the authorized personnel approved his requests.

Administrative employees who assisted Weiss in submitting his personal business development account expenses for approval acknowledged they knew he was piloting his own plane in connection with firm business. Jared Mitchell, a registered service associate with the firm, testified that he was aware that Weiss flew his plane for business, including flying clients and prospective clients, and submitted expense reports related to these flights. Similarly, Irene Haberstroh, a sales assistant, testified that she was aware Weiss was flying his own plane for business purposes.

*The Jury's Finding*

The jury found that Weiss was acting within the scope of his employment at the time of the fatal accident. The trial court's judgment then imposed joint and several liability on Weiss and the firm.

Raymond James appeals.

## DISCUSSION

On appeal, Raymond James raises a single issue, challenging the legal sufficiency of the evidence to support the jury's finding that Weiss was acting within the scope of his employment with Raymond James on the day of the accident.

### Legal Sufficiency

The standard for reviewing the evidence for legal sufficiency is well-settled. Evidence is not legally sufficient to support a jury finding when the evidence:

- cannot be given weight under rules of law or evidence;

- amounts to no more than a mere scintilla;

- conclusively establishes the opposite of what it is meant to prove; or

- appears nowhere in the record.

*Pay and Save, Inc. v. Canales*, 691 S.W.3d 499, 502 (Tex. 2024).

So, when, as here, a party challenges the legal sufficiency of the evidence as to an adverse finding on which it did not bear the burden of proof at trial, the party must show that no competent evidence supports the finding. *Graham Cent. Station*

9

*v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). A legal-sufficiency challenge fails if more than a scintilla of evidence supports the challenged finding. *Tex. Outfitters Ltd. v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019).

More than a scintilla of evidence exists when the evidence as a whole allows reasonable and fair-minded people to draw different conclusions. *Waste Mgmt. of Tex. v. Tex. Disposal Sys. Landfill*, 434 S.W.3d 142, 156 (Tex. 2014). In contrast, evidence is not more than a scintilla if it is so weak that it does no more than create a mere surmise or suspicion that a fact exists or is so slight that any inference that one draws from it is a mere guess. *City of Houston v. Proler*, 437 S.W.3d 529, 532 (Tex. 2014).

As precedent instructs, we review the record in the light most favorable to the verdict. *Albert v. Fort Worth & W. R.R. Co.*, 690 S.W.3d 92, 99 (Tex. 2024). We credit evidence that supports the verdict if reasonable jurors could do so, and we disregard evidence that is contrary to the verdict unless reasonable jurors could not do so. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014); *see also Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 859 (Tex. 2017) (noting that legal-sufficiency review is limited to evidence tending to support verdict and disregards contrary evidence unless contrary evidence is conclusive).

Proper appellate review of the evidence for legal sufficiency defers the jury's credibility determinations. *City of Keller v. Wilson*, 168 S.W.3d 802, 816–17 (Tex.

10

2005). The jury is the sole judge of the credibility of the witnesses and decides how much weight to give their testimony. *Horton v. Kansas City S. R.R.*, 692 S.W.3d 112, 135 (Tex. 2024). It may choose to believe or disbelieve a witness's testimony in whole or in part. *Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018).

Parties may use direct or circumstantial evidence to prove a material fact. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Direct evidence generally is documents or testimony by witnesses with firsthand knowledge. *See Schindler Elevator Corp. v. Ceasar*, 670 S.W.3d 577, 586 n.31 (Tex. 2023). Circumstantial evidence is indirect evidence that reasonably allows one to infer the existence of another fact. *In re Lipsky*, 460 S.W.3d 579, 588–89 (Tex. 2015).

Just as we review the evidence in the light most favorable to the verdict, we also indulge every reasonable inference from the evidence in favor of the jury's verdict. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). That is, we assume that the jury drew any and all possible inferences in favor of its verdict that it could have drawn from the evidence, provided that reasonable jurors could have done so. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620–21 (Tex. 2014).

"An inference is not reasonable if [the evidence] is susceptible to multiple, equally probable inferences, requiring the factfinder to guess in order to reach a conclusion." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 634 (Tex. 2015). Courts sometimes refer to this evidentiary principle as the equal-inference rule, under which

meager circumstantial evidence that gives rise to multiple inferences, none of which is more likely to be true, is no evidence. *Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013).

But evidence is not legally insufficient solely because a jury could draw more than one inference from it, depending on how the jury resolves conflicts in the evidence or weighs the credibility of witnesses. *Lozano v. Lozano*, 52 S.W.3d 141, 148–49 (Tex. 2001) (Phillips, C.J., concurring and dissenting, joined by four other justices on this point); *Primoris Energy Servs. Corp. v. Myers*, 569 S.W.3d 745, 757 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("[C]hoosing 'among opposing reasonable inferences' is a determination for the jury, which is 'entitled to consider the circumstantial evidence, weigh witnesses' credibility, and make reasonable inferences from the evidence it chooses to believe.'" (quoting *Lozano*, 569 S.W.3d at 149)). It is the province of the jury to draw the inference that it finds most reasonable from the evidence, "so long as more than one is possible and the jury must not simply guess." *City of Keller*, 168 S.W.3d at 821.

**The Jury's Vicarious-Liability Finding**

When the trial court presented the final version of its jury charge to the parties, neither side objected or reiterated prior objections. By failing to object, Raymond James did not forfeit the right to challenge the legal sufficiency of the evidence. *See Musallam v. Ali*, 560 S.W.3d 636, 639 (Tex. 2018). But when a party makes no

objection to the jury charge, we examine the legal sufficiency of the evidence in light of the charge as it was given. *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 407 (Tex. 2016).

The trial court's jury charge read as follows as to vicarious liability:

> On the date of the accident in question, was Jeffrey Weiss acting in the scope of his employment with Raymond James?
>
> An employee is acting in the scope of his employment if—
>
>> he is acting in the furtherance of the business of his employer and
>>
>> his action is of the same general nature as the conduct authorized by his employer and is for the accomplishment of the object for which the employee was hired.
>
> In some circumstances, an employee's conduct may be within the general nature of the conduct authorized by the employer even if it is contrary to the employer's express orders. Whether the employee is acting contrary to express orders is one factor that you may consider in deciding whether an act is in the scope of employment.
>
> Answer "Yes" or "No":

The jury answered "yes." The question before us is whether the evidence is legally sufficient to support the jury's answer under this charge. The answer is yes.

**Analysis**

More than a scintilla of evidence supported the jury's finding that, at the time of the accident, Weiss was acting in the furtherance of the business of his employer and his action was of the same general nature as the conduct authorized by his

13

employer and for the accomplishment of the object for which he was hired. Thus, we affirm.

*Prospecting*

A document created by Raymond James summarized Weiss's job as prospecting for clients. It identified seeking business from existing and potential clients as one of his essential job duties—as an object for which he was hired. The jury heard testimony that, to succeed, Weiss would have to prospect, and that both he and Raymond James would benefit from his business development.

Moreover, a 2016 e-mail that Weiss sent to a former colleague, Frank Maggio, offers evidence that Weiss used his plane to develop business. Weiss said he was "doing great" at the firm and explained, "[I]t's through aviation that I am acquiring clients and new opportunities." Weiss's expense reports for his personal business development account corroborate that he was using his plane to develop business: he expensed flight costs as business development expenses. And the reports identified multiple persons as prospects in connection with flights.

As to these specific passengers, reports make clear that Weiss had identified as prospects (in meal receipts and travel expenses) individuals who were on the plane. In reports over the past year and a half, he had identified Stuart Kensinger, Angie Kensinger, and Reagan Miller—all of whom were on the fatal flight—as prospects.

This record contains some evidence, and legally sufficient evidence, that Weiss was prospecting for clients on behalf of himself and the firm—acting in the furtherance of the business of his employer and for the accomplishment of the object for which he was hired—at the time of the accident.

To be sure, the evidence depends on an inference that, having identified the Kensingers and Miller as prospects before, Weiss continued to view and pursue them as prospective clients and was using the fatal flight to do so (as opposed to flying them just as his friends). Given the evidence the jury heard in this case, that inference is a permissible, reasonable one.

By its nature, circumstantial evidence often involves linking separate events to show a pattern. *Castillo*, 444 S.W.3d at 622. The question posed in such instances is whether there is enough evidence for a jury to reasonably discern a pattern. *Id.*

Here, evidence—expense reports for meals—shows that Weiss had identified Stuart Kensinger as a prospect as early as 2016 and 2017. Meal-related expense reports continued to identify Stuart as a prospect in January 2018, May 2018, and January 2019. The last of these is a few months shy of the accident.

In the same general timeframe, Weiss began to identify the Kensingers as prospects in expense reports concerning flights. Weiss listed either Stuart, Angie, or both as prospects in connection with flights in January 2018, February 2018,

September 2018, and March 2019—the last being a month or so before the accident. In addition, Weiss listed Reagan Miller as a prospect for a February 2018 flight.

From this evidence, the jury could have reasonably inferred that Weiss viewed them as prospects—and was prospecting for his firm—at the time of the accident, as was the case when he flew them on the other occasions identified above. The jury could have relied on the evidence that Weiss had already identified three of the passengers on the fatal flight as prospects multiple times beforehand. In particular, Weiss did so several times in the year and half immediately preceding the accident. It was reasonable for the jury to infer from these circumstances that Weiss continued to see the Kensingers and Miller as prospective clients and was acting in the scope of his employment on the day of the accident. More than a scintilla of evidence supports the jury's finding that Weiss was acting in furtherance of Raymond James's business at the time and that his action was for the accomplishment of the object for which he was hired.

The jury heard varied evidence here. For instance, the record also includes evidence that Weiss had long known the Kensingers and had previously flown them at times without filing expense reports identifying them as prospective clients. But it was for the jury to weigh the evidence and its credibility, and the jury could have reasonably found the expense reports for the more recent 2018–19 flights in which Weiss did identify the Kensingers as prospects to be more probative of whether

Weiss was acting in the scope of his employment on the day of the accident, precisely because these flights took place closer in time to the accident. It is not unreasonable, for example, for a factfinder to have found that the March 2019 flight-related expense report, which identified both of the Kensingers as prospective clients, had more bearing on whether Weiss was acting in the scope of his employment in April 2019 than other more distant events.

That the jury could have reasonably drawn this conclusion is dispositive because we must credit every reasonable inference the jury could have drawn from the circumstantial evidence it heard. *Gunn*, 554 S.W.3d at 658. Ultimately, in situations like the one before us, it is the jury's role to resolve arguable inconsistencies in the evidence. *See McAllen Hosps. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019) (jury resolves evidentiary conflicts).

The passengers' purpose for the flight does not alter this conclusion. Indeed, the passengers' purpose in flying did not necessarily align with Weiss's. The jury heard undisputed evidence that the passengers merely intended to get from point A to B to discuss a proposed building and landscaping project. But consistent with the law, the charge asked the jury to decide whether *Weiss* was acting in the scope of his employment, which is an objective inquiry that focuses on whether there is a connection between the employee's job duties and his tortious conduct. *Laverie v.*

*Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017). The passengers' intentions or motives are not relevant to the scope-of-employment question posed in the charge. *See id.*

*Actions of Same General Nature as Conduct Authorized by Employer*

There was likewise more than a scintilla of evidence on which the jury could have determined that Weiss's actions were of the same general nature as conduct authorized by his firm. As explained, the record shows that prospecting for clients was a core part of Weiss's job that was both authorized by the firm and essential to his role. There was also evidence that Raymond James approved business development reports and reimbursed Weiss for expenses associated with transporting prospective clients—including these same individuals—in the past, as well as for taking a passenger to meals as a prospect.

The firm's written policy concerning personal business development accounts provided that those accounts would be overseen by an administrator with the authority to determine which expenses were eligible, to decide the adequacy of any support presented for expenses, and to approve their reimbursement or to delegate approval authority to branch managers and other officers or employees. Under the policy, these reimbursement decisions were "final and binding" on financial advisors and did not have to be uniform as to the advisors.

Consistent with Raymond James's written policy concerning personal business development accounts, approvals of the transportation expenses submitted

18

by Weiss were made by officers or other employees to whom the firm had delegated this authority. According to Zimmerman, these expenses were not rubber-stamped. He testified that "many times" the administrator "would come back with a rejection as to part of the expense due to ineligibility." Documents admitted into evidence corroborated that those responsible for approving business development expenses, including those relating to travel, did not do so without scrutiny. For example, Weiss submitted two receipts for flights to and from Marfa, Texas, in January 2018. A firm employee noticed that the two receipts involved "a lot of mileage," thought they might be duplicates, and asked Weiss to clarify whether this was the case. Weiss responded, explaining that they were not duplicates but rather involved two round trips to and from Marfa to discuss estate planning, including with Stuart Kensinger and his adult child, Philip. After being provided with this explanation, the employee approved the expense he initially mistook for a duplicate.

In response to evidence of this kind, Raymond James places great emphasis on the fact that its travel and expense reimbursement policy expressly forbade Weiss from using his plane to develop business. The firm emphasizes that he only managed to expense flights surreptitiously by recording flight miles as driving miles.

But, consistent with the law, the charge instructed the jury that an employee may be acting within the scope of his employment even if he is acting against the express orders of his employer, and that such disobedience is merely *a factor* for the

jury's consideration. *See, e.g.*, *Lone Star Heat Treating Co. v. Liberty Mut. Fire Ins. Co.*, 233 S.W.3d 524, 530 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (noting that vicarious liability imputing liability to employer for acts or omissions of employees may apply even if employee's acts were unauthorized so long as employee's acts otherwise satisfy scope-of-employment legal standard).

The jury could have reasonably discounted the firm's written policy. First, it could have reasonably doubted that the firm's private-aircraft prohibition applied to Weiss's personal business development account. Second, even if the jury concluded that the prohibition applied broadly, it could have reasonably found that the firm knew Weiss was not following that policy—and was using his plane for business development purposes—but chose not to enforce the policy in this case.

The record contains conflicting evidence here. As to the prohibition's applicability, it is undisputed that Weiss expensed aircraft mileage as a business development expense under his personal business development account. Charles Zimmerman, the head of the Houston branch and Weiss's direct supervisor at the time of the accident, testified that the firm's policy governing personal business development accounts did not to his knowledge include a prohibition on the use of private aircraft like the one contained in the firm's travel and expense reimbursement policy. Though Zimmerman's statement is less than conclusive, he was designated as Raymond James's corporate representative and no witness contradicted him on

20

this point. And some individuals working at the firm, including those with delegated authority to approve personal business development expenses, either knew that Weiss was expensing business development flights or at least were aware that he was expensing mileage that could not reasonably be consistent with car travel under his personal business development account—and they approved his requests anyway.

To be sure, there is contrary evidence in the record. Weiss expensed aircraft mileage as automobile mileage, which an administrative manager, Ryan Strange, described as a misrepresentation. And Strange said management did not know Weiss was expensing flight miles in this way. Strange also testified that he had an in-person, follow-up conversation with Weiss about the private-aircraft prohibition, during which he told Weiss that the prohibition applied across the board, including with respect to Weiss's personal business development account. Finally, the private-aircraft prohibition is included in multiple firm documents relating to travel, and the personal business development account contains general language to the effect that it incorporates various firm codes and policies (though none relating to travel included in the record are specifically referenced by name).

As with any other conflict in the evidence, the conflicting evidence regarding the applicability of the private-aircraft prohibition was for the jury to resolve, particularly given that this conflict turns at least in part on the jury's evaluation of

21

witness credibility. *See City of Keller*, 168 S.W.3d at 816–17 (observing that, unless conclusive evidence contradicts jury such that it has disregarded the undisputed truth, proper legal-sufficiency review prevents reviewing courts from substituting their opinions on credibility for those of the jurors).

In any event, assuming the private-aircraft prohibition applied in full force in this context (and in all contexts), the record contains evidence from which the jury could have reasonably found that the firm was aware of Weiss's noncompliance and tacitly condoned it. In light of this evidence, the jury could have reasonably concluded that the firm's express prohibition of the use of private aircraft for business purposes, while a factor, was not especially probative of whether Weiss was acting within the scope of his employment at the time of the fatal accident.

Weiss repeatedly expensed business development mileage that, on its face, would cause a reasonable person to question whether it could involve travel by automobile, as opposed to by plane. Taking into account only expense reports that stated travel in excess of 1,000 miles in a single day, Weiss's expense reports show:

- 2,856 miles for a single day's travel in August 2016;
- 1,587 miles for a single day's travel in September 2017;
- 1,342 miles for a single day's travel in November 2017;
- 1,174 miles for a single day's travel in February 2018;
- 1,187 miles for a single day's travel in March 2018;
- 2,981 miles for a single day's travel in March 2018;

- 1,887 miles for a single day's travel in April 2018;

- 2,006 miles for a single day's travel in April 2018;

- 1,309 miles for a single day's travel in June 2018;

- 1,046 miles for a single day's travel in July 2018;

- 1,234 miles for a single day's travel in July 2018;

- 1,111 miles for a single day's travel in October 2018; and

- 1,007 miles for a single day's travel in December 2018.

Weiss or one of his assistants submitted all of these business development expenses for firm approval—and Raymond James approved each and every one.

Strange, the manager who oversaw administrative matters for all four Houston-area branches of the firm, acknowledged that he did not make any internal inquiry as to whether the firm's actual practice differed from its written policy. This acknowledgement is significant because Weiss's repeated expensing of business development mileage too high to represent travel by automobile, particularly during the year immediately preceding the accident, permits an inference that Raymond James's practice was to allow Weiss to engage in very conduct (business development through use of his plane) that it forbade in its travel and expense reimbursement policy. Here, as with Weiss's repeated identification of the Kensingers as prospects in his expense reports, the jury could have reasonably discerned a pattern from the firm's repeated approval of Weiss's high-mileage

expenses and concluded that this pattern is inconsistent with the firm's position that it neither knew nor approved of Weiss's use of his plane.

In sum, although the evidence that Weiss was acting within the scope of his employment on the date of the accident is circumstantial, it is not so meager that the jury's finding on this issue is a mere guess. Some competent evidence exists. Therefore, the evidence is legally sufficient to support the challenged finding.

*Raymond James's "Coming-and-Going" Caselaw is Inapplicable*

Citing "coming-and-going" decisions like *Cameron International Corporation v. Martinez*, Raymond James argues that evidence relating to Weiss's travel expenses cannot create a fact question as to whether he was acting within the scope of his employment. *See* 662 S.W.3d 373, 378 (Tex. 2022) (mere existence of travel allowance held insufficient to create fact issue as to whether employee was acting within scope of his employment while traveling back to job site).

But *Martinez* does not control here. There, an oilfield worker experienced a car accident while returning to a work site to sleep after having dinner elsewhere. *Id.* at 375. The injured parties sued the worker for negligence and his employer for vicarious liability. *Id.* at 376. Relying on the general rule that an employer is not liable for its employee's negligent acts while traveling to and from work, the Supreme Court held the employer was entitled to summary judgment. *Id.* at 376–79 (referring to "coming-and-going rule" in holding there was no liability).

The injured parties in *Martinez* sought to stave off summary judgment by showing the employer paid the oilfield worker a travel allowance, which they argued was some evidence that the employer effectively authorized his travel, and thus that he was acting in the scope of his employment. *See id.* at 378. The Court rejected this argument, holding that the travel allowance was "not sufficient to create a fact question as to whether an employee was acting within the course and scope of employment at a specific point," given "the undisputed evidence that [the employee] was returning from running personal errands at the time of the accident." *Id.*

Unlike *Martinez*, the case before us does not involve travel to or from work and its attendant general rule that such coming and going is outside the scope of employment. The estate representatives and wrongful death beneficiaries here do not argue that the mere provision of a personal business development account by Raymond James renders any travel he could have expensed, including flights he piloted, within the scope of his employment as a financial advisor.

Instead, they contend that Weiss's flight-related (and meal) expense reports constitute some evidence that Weiss viewed Stuart and Angie Kensinger and Reagan Miller as prospective clients—and that he was prospecting for their business at the time that he flew them in the fatal accident. It is undisputed that prospecting was one of Weiss's essential job duties and that he had recently identified these individuals as prospects. There is also evidence he used his passion for aviation to develop

25

business. As explained, the circumstances, taken together, offer some evidence that he was prospecting on the day of the fatal flight and acting within the scope of his employment at the time. The rule stated in *Martinez*—that an employer's payment of a travel allowance does not create a fact issue as to whether an employee is acting within the scope of his employment at any given point of travel—has no application here.

We emphasize that we do not in any way hold that a financial advisor (or anyone else in a client development role) is always prospecting or that their employers are always (or even often) responsible. "[I]t is a well-established principle that merely because an employee is on-duty, or on-call twenty-four hours a day, does not mean that the person is always acting within the scope of his employment." *Martin v. Vill. of Surfside Beach*, No. 14-22-00085-CV, 2023 WL 3476939, at *4 (Tex. App.—Houston [14th Dist.] May 16, 2023, no pet.); *Garcia v. City of Houston*, 799 S.W.2d 496, 499 (Tex. App.—El Paso 1990, writ denied) ("[E]ven where an employee is on call 24 hours a day he must be engaged in or about the furtherance of the affairs or business of his employer to be in the scope of his employment.").

Our holding is narrowly limited to this specific record, which contains more than a scintilla of evidence on which the jury could have determined here that Weiss was acting in the scope of his employment at the time of the accident.

We overrule Raymond James's sole appellate issue.

# CONCLUSION

We affirm the trial court's judgment.

Jennifer Caughey
Justice

Panel consists of Justices Guerra, Caughey, and Morgan.